**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

OLIVIER MARTINEZ and SHEEBA, INC.,

         Plaintiffs,

    - against -

VAKKO HOLDING A.S., VAKKO TEKSTIL
VE HAZIR GIYIM SANAYI ISLETMELERI A.S.,
CEM HAKKO, STARWORKS, LLC, TURK
HAVA YOLLARI A.O., TURKISH AIRLINES,
INC. and JOHN DOES, 1-10,

         Defendants.

07 CV 3413 (LAP)

**DECLARATION OF**
**LARA E. ROMANSIC**

LARA E. ROMANSIC states as follows:

1.    I am a member of the Bar of this Court and associated with the firm of Steptoe & Johnson LLP, counsel for defendant Starworks, LLC ("Starworks") in the above-captioned case. I make this declaration in support of Starworks' motion to dismiss the Complaint.

2.    Annexed hereto as **Exhibit A** is a true and correct copy of the letter agreement entered into by Starworks and Vakko Tekstil ve Hazir Giyim Sanayi Isletmeleri A.S., dated March 2, 2007 (the "Letter Agreement").

3.    Annexed hereto as **Exhibit B** is a true and correct copy of the Complaint filed by plaintiffs in the above-captioned action.

Dated:  September 26, 2007
       New York, New York

                                     _____
                                          Lara E. Romansic

# EXHIBIT A

MAR-03-2006 FRI 01:28 PM          FAX NO. _____
5 CRUSBY STREET, SUITE 4C / NEW YORK, NEW YORK 10013.

March 2nd 2006

Vakko
ATTN: DEMET MUFTUOGLU
Vakko Tekstil ve Hazir Giyim Sanayi Isletmeleri A.S.
Ali Riza Gurcan Cad. No. 27 Merter
Istanbul, Turkey

Dear Ms. Muftuoglu,

This letter will confirm the terms of the agreement between Starworks, LLC,
located at 5 Crosby Street, New York, New York ("Starworks") and Vakko, with a
principal place of business at (address) ("VAKKO") whereby Starworks has agreed to
furnish the services of Olivier Martinez (hereinafter known as "Talent") to VAKKO to
promote and market VAKKO via a print advertising campaign (the "Campaign"). It is
expressly understood and agreed that VAKKO has no pre-existing relationship with the
Talent and that Starworks is being engaged exclusively to furnish the services of Talent
in connection with the Campaign. It is expressly understood that any contractual
relationship that might be created (whether commercial endorsement, spokesperson
etc...) will occur between VAKKO and Starworks for the services of Talent; and there is
in existence an agreement between Starworks and Talent whereby Starworks has the
right to furnish the services of Talent in connection with this agreement.

1.     Payment: Payment shall be structured as follows:     ULTRA
       Starworks shall invoice VAKKO a total of (140,000 US Dollars) for the services of
Talent. This fee shall be transfered immediately to a bank account that Starworks shall
present to Vakko along with an invoice to VAKKO. All said monies above must be
present in proposed bank account before March 7th, 2006.
       This fee shall include all Talent services and commisions. Starworks will be
responsible for paying Talent.

Bank Account Transfer Information:
 JP Morgan Chase Bank
   90 Fifth Avenue, 2nd floor, NY, NY 10011
 Starworks LLC.
 Account number: 025500742065
 Swift Code: Chase US 33
 Routing: 021000021

2.     Talent Usage: Starworks has negotiated all Talent usage on behalf of Vakko.
Talent usage is as follows: Consumer ads, outdoor, promotional postcards, behind-the-

MAR-03-2006 FRI 01:26 PM                    FAX NO.                    P.
03/02/2006  18:04    6463365058                STARWORKS

scenes, public relations purposes, internet, point-of-sale material to be used in stores and windows. The Vakko campaign will be permitted to run in Turkey with Olivier Martinez only from March 28, 2006 through July 10th 2006.

3.    Indemnity: Starworks shall not be liable in any way for any misappropriation of or unauthorized use or reprint of Talent's name, photograph, image or likeness as used by VAKKO. VAKKO hereby agrees to defend, indemnify and hold Starworks harmless from any and all claims arising from, concerning or relating to such unauthorized uses.

4.    Usage: Starworks shall be allowed to make promotional use of photos from the VAKKO Campaign on its company website and for public relations purposes.

5.    Miscellaneous: This agreement, along with the Supplementary Terms attached hereto and incorporated herein by reference, shall constitute the mutual understanding of Starworks and VAKKO. This agreement may not be amended without writing signed by all parties. This agreement supersedes all prior agreements, whether oral or written, between Starworks and VAKKO. The laws of the State of New York shall govern this agreement, without reference to its conflict of laws provisions.

Agreed to and accepted, this 2nd day of March 2006.

Starworks, LLC                                    Vakko

By: Alana Varol                                   By: Demet Muftuoglu

Title: Co-owner                                   Title: Art Director

2.

03/02/2006  18:54  6463365959          STARWORKS          PAGE  03

## STANDARD SUPPLEMENTARY TERMS

Performer:            Olivier Martinez (individually and collectively "Talent")
Agency:
Seasonal Campaign:    VAKKO Spring/Summer 2005Campaign

The following sets forth the supplementary terms ("Supplementary Terms") pursuant to which Starworks shall furnish the services of the above-designated Talent to Vakko, and Vakko shall have the right to use the product of Talent's services, in connection with the above-designated Seasonal Campaign as provided in the latter attached hereto and incorporated herein by reference ("Deal Memo"). The Deal Memo and these Supplementary Terms together constitute the entire agreement ("Agreement") between the parties hereto with respect to the subject matter hereof. All capitalized terms contained in these Supplementary Terms shall have the same meaning as in the Deal Memo except as and to the extent expressly provided otherwise. In case of any conflict between any provision in the Deal Memo and these Supplementary Terms, the Deal Memo shall be deemed controlling to the extent required to resolve the conflict.

1.      Starworks agrees to furnish the services of Talent to perform all services hereunder in a first class, professional and competent manner including by arriving on location in top physical and mental condition and in a timely manner to ensure optimal performance thereof. Talent further agrees to maintain Talent's current weight, hairstyle and color and all other features of Talent's physiognomy and appearance as they are as of the date hereof or in such other form as VAKKO may request. Starworks and Talent acknowledge that Talent's services hereunder shall be subject to Vakko's direction and control at all times, and Starworks and Talent agree to promptly comply with all of Vakko's reasonable instructions. Any request to change talent's appearance will be subject to talent's approval ie: hair change etc...

2.      Starworks and Talent acknowledge and agree that Vakko shall own all rights now or hereafter known in and to the product of Talent's services under the Agreement (the "Materials") as a work-for-hire and that Vakko shall have the right to use the Materials, as well as Performer's name, picture, likeness and biographical information, as Vakko shall reasonably determine subject to the terms of the Deal Memo and these Supplementary Terms. Starworks and Talent acknowledge Vakko's artistic control with respect to the Materials and Vakko's right to create and to make changes in the Materials as Vakko shall reasonably determine, and Starworks and Talent agree that they shall not have any right of approval or consultation in connection therewith.

3.      Starworks represents that it has the right to enter into this Agreement and furnish the services of Talent; Talent represents that it is free to perform all of Talent's obligations hereunder as they relate to Talent personally and that the exercise of the rights granted by Starworks and Talent hereunder shall not conflict with the Talent's existing commitments or violate or infringe upon the rights of any third party. Talent further represents that Starworks is the sole and exclusive representative authorized to

3

03/02/2006  10:04  6463365950          STARWORKS                    PAGE  04

act as Talent's representative in connection with the Agreement and that Talent shall look solely to Starworks for any payments owing hereunder. Talent shall be responsible for fees due to any other third parties in connection with the Agreement.

4

4.      Vakko shall have the right to terminate the Agreement if (a) Starworks and/or Talent breach any material term hereof or Talent dies or Talent fails or is unwilling or unable to perform to the full extent as Starworks has agreed for any other reason (including any material alteration in Talent's appearance or disability which prevents Talent from fully rendering the services required hereunder), and such breach or other non-performance is not cured, if curable, within forty-eight (48) hours following Starworks' receipt of written notice thereof, or (b) due to an Event of Force Majeure (defined as any cause beyond Vakko's control other than as set forth in (a) above) Vakko is prevented or hampered from utilizing Talent's services thereunder for a period of five (5) consecutive days or ten (10) days in the aggregate during any fifteen (15) day period.  If Vakko terminates this Agreement due to Starworks and/or Talent's breach, (i) Vakko shall have the right to deduct, from any compensation otherwise payable, any costs or damages resulting from the breach and (ii) Vakko's right to use the Materials, and Starworks' and Talent's then-existing exclusivity obligations as provided in the Agreement shall remain in full force and effect.  If Vakko terminates the Agreement due to an Event of Force Majeure or any cause set forth in clause (a) above other than Starworks and/or Talent's breach, Vakko shall be released from any obligation to pay any compensation to Starworks and/or Talent.  Vakko's exercise of any of its rights under this Paragraph 4 shall be without prejudice to its right to exercise any other rights or to seek or obtain any other remedies it may have at law.

5.      If Talent shall be required by Vakko in connection with Talent's services hereunder to travel to any location Vakko will provide first class ground transportation to and from location and between Talent's hotel and the location of the required services.

6.      All information which Starworks and/or Talent may obtain or derive in connection with Talent's engagement with Vakko which is not the subject of general public knowledge (including, without limitation, creative concepts utilized in production of any campaign or show and any compensation payable by Vakko to Performer or others) is deemed Confidential Information, and Starworks and Talent agree that they shall not disclose any Confidential Information (other than to Agency on a need to know basis) or use any Confidential Information for their own benefit or the benefit of any third party.

7.      Starworks and Talent acknowledge that Talent's appropriate public statements and Talent's conduct consistent with the dignity and good reputation of Vakko are essential elements Talent's obligations under this Agreement.  Accordingly, if Talent at any time makes any statement in derogation of Vakko or its trademarks or products and such statement becomes a matter of public knowledge, or if Talent maintains a personal lifestyle which diminishes, impairs or in any manner detracts from the prestige or reputation of Vakko or its trademarks or products or commits any act which brings Talent into public disrepute, contempt, scandal or ridicule, or shocks, insults or offends or otherwise reflects unfavorably upon Vakko or its trademarks or products, such statement or conduct, as applicable, shall be deemed a material breach of this Agreement, and Vakko shall have the right to terminate the Agreement based upon such breach without prejudice to its right to exercise any other rights or to seek or obtain any other remedies it may have at law or in equity.

7.a. The talent will be working a total of 10 hours, on the day of the shoot. ~~He will~~ It will be 5 outfits, with variations.

8.    This agreement, regardless of the place of its execution, shall be interpreted in accordance with the New York law applicable to agreements made and performed entirely in the state of New York. The parties hereto consent to the exclusive jurisdiction of the courts of New York state for the resolution of any dispute arising hereunder and agree that New York, New York shall be the agreed upon venue.

9.    For the purpose of the Agreement, neither Starworks nor Talent shall be considered an employee of Vakko and neither shall be entitled to any benefits which Vakko maintains or is required by law to maintain for the benefit of its employees. Starworks and/or Talent shall be responsible for the payment of any and all tax or other obligations owed by Starworks and/or Talent by virtue of the Agreement.  Talent's obligations under the Agreement are personal to Talent and may not be assigned.

10.    Notices required or permitted under the Agreement shall be in writing and delivered personally and/or via overnight courier. If to Vakko such notices shall be sent to the address set forth above, and if to Starworks and/or Talent, shall be sent in care of Starworks at the address set forth above,  Attention: Alana Varel or to such different address as may hereafter be specified by either party in writing to the other.  Notices delivered personally shall be deemed received upon actual receipt and notices sent by overnight courier shall be deemed received one (1) business day after deposit with the overnight courier.

11.    No addition or other modification to the Agreement shall be valid, and no waiver of any default shall be deemed a waiver of any prior or subsequent default of the same or other provision hereof, unless in writing and signed by both of the parties hereto.  The Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements in connection therewith. This agreement may be executed in counter-parts and by facsimile, all of which when taken together shall be deemed one original.

ACCEPTED AND AGREED:

By: _____
Starworks, LLC
An Authorized Signatory

ACCEPTED AND AGREED:

By: _____
Vakko
An Authorized Signatory

6

# EXHIBIT B

REDNISS & ASSOCIATES LLC
Seth Redniss, Esq. (SR-7988)
185 Franklin Street, 5th Floor
New York, New York 10013
Tel: (212) 334-9200
Fax: (212) 334-9212

APR 3 0 2007

*Attorneys for plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE PRESKA

---------------------------------------------------------X

OLIVIER MARTINEZ and SHEEBA, INC.,

07 CV Case No.: 3413

Plaintiffs,

- against -

COMPLAINT

VAKKO HOLDING A.S., VAKKO TEKSTIL
VE HAZIR GIYIM SANAYI ISLETMELERI A.S.,
CEM HAKKO, STARWORKS, LLC, TURK
HAVA YOLLARI A.O., TURKISH AIRLINES, INC.
and JOHN DOES, 1-10,

Defendants.

---------------------------------------------------------X

Plaintiffs Oliver Martinez and Sheeba, Inc. (collectively, "plaintiffs") by and through their undersigned attorneys, Redniss & Associates LLC, as and for their Complaint against defendants Vakko Holding A.S., Vakko Tekstil ve Hazir Giyim Sanayi Isletmeleri A.S., Cem Hakko, Starworks, LLC, Turk Hava Yollari A.O., Turkish Airlines, Inc. and John Does, 1-10, allege as follows:

## SUMMARY OF ALLEGATIONS

1. This action arises out of defendants' knowing, lavish, illegal and unremitting commercial exploitation of Mr. Martinez's image, name and reputation for their commercial purposes well beyond the terms of an explicit contract. Despite being caught, and admitting to,

illegally using photographs of Mr. Martinez in worldwide advertisements, defendants have refused to compensate Mr. Martinez or even cease their illicit activities. While the contract restricted the use of Martinez's images to Turkish-language publications in Turkey, his photograph and name were used worldwide, including on the back cover of an English-language only magazine circulated in London, Paris, Milan, Rome, New York, Los Angeles, Amsterdam, Barcelona, Rio de Janeiro, Brussels, Berlin, Tokyo, Sydney, Dubai, Beirut, Lisbon, Athens, Tel Aviv, Moscow, Hong Kong, Toronto, Cairo, Melbourne, Vienna, Sao Paolo, Helsinki, Casablanca, Bangkok, Zurich, Auckland, Taipei, Seoul and Cape Town.

## JURISDICTION

2.  This Court's jurisdiction is premised upon 28 U.S.C. §1332, inasmuch as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

## VENUE

3.  Venue in this Court is proper pursuant to 28 U.S.C. §1391 (a)(1),(2) and (3) since at least one of the defendants are believed to reside in this judicial district; a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this judicial district; and at least one of the defendants is subject to personal jurisdiction in this judicial district.

## PARTIES

4.  Plaintiff Olivier Martinez ("Martinez") is a professional actor and a citizen of the State of California. Plaintiff Sheeba, Inc. ("Sheeba") is a California corporation with its principal place of business in Los Angeles. Sheeba operates as Martinez's loan-out company, providing his services to third-parties.

5.  Upon information and belief, defendants Vakko Holding A.S. ("Vakko Holding") and Vakko Tekstil ve Hazir Giyim Sanayi Isletmeleri A.S. ("Vakko") are joint stock companies

-2-

organized and existing under the laws of the Republic of Turkey with their principal places of business in Istanbul. Upon information and belief, Vakko Holding is a diversified holding and investment company, and Vakko, an affiliate, is in the business of manufacturing, distributing, marketing and selling men's and women's designer clothing and accessories worldwide, including in New York State, through various retail and Internet channels.

6.   Upon information and belief, Defendant Cem Hakko ("Hakko") is a Turkish citizen and, individually and together with other family members, owns and controls Vakko Holding. Hakko, aggressively courts, and is often photographed with, international celebrities to promote Vakko's retail brand.

7.   Upon information and belief, Hakko and Vakko Holding, directly and indirectly, own assets and have substantial business dealings in New York.  At all relevant times, Hakko and Vakko Holding dominated and controlled, and continue to dominate and control, the actions, day-to-day activities and policies of Vakko. Upon information and belief, Vakko exists as a shell, agency, conduit, extension and/or de facto of Hakko and Vakko Holding and does not have any genuine or separate corporate existence, but has been used and exists for the sole or dominant purpose of permitting Hakko and Vakko Holding to transact a portion or all of their business under a corporate guise; and to unjustly attempt to shield themselves from prospective liability for illegal actions such as those alleged herein. Upon information and belief, Hakko, Vakko Holding and Vakko are the alter ego of each other and/or act as one single entity.

8.   Upon information and belief, defendant Starworks, LLC ("Starworks") is a New York limited liability company with its principal place of business in New York City. Starworks provides celebrity casting services.

9.  Upon information and belief, defendant Turk Hava Yollari A.O. ("THY") is a corporation organized and existing under the laws of the Republic of Turkey with its principal place of business in Istanbul, Turkish Airlines is the national airline of the Republic of Turkey and conducts business worldwide, including in the State of New York, through, inter alia, defendant Turkish Airlines, Inc., a New York corporation with its principal place of business in New York City. THY and TANY will be collectively referred to herein as "Turkish Airlines."

10. Upon information and belief, John Does, 1-10, are individuals and/or entities, related to the facts, allegations and causes of action, presently unnamed but may be named as additional defendants as a result of discovery.

## BACKGROUND FACTS

11. By agreement dated March 6, 2006, Martinez and Sheeba contracted with Starworks and Vakko (the "Contract") for Martinez's services as the "face" of Vakko's 2006 Spring-Summer men's advertising campaign in Turkey (the "Spring Campaign"). Model Gisele Bundchen featured in Vakko's women's campaign.

12. On March 7, 2006, Martinez was photographed in Beverly Hills and various images (the "Images") were obtained for exclusive use in the Spring Campaign. Under the Contract, Vakko's use of the Images was strictly limited (i) to the period between March 26, 2006 and July 10, 2006; (ii) in Turkish language advertising (iii) in Turkey; and (iv) and for the Spring Campaign. The Contract also guaranteed Martinez approval rights over the Images.

13. Notwithstanding the strict contractual limitations on Vakko's ability to use the Images, Vakko has shamelessly and repeatedly breached each and every term of the Contract. As further detailed below, defendants have unlawfully used the Images for purposes other than the Campaign, beyond the July 10, 2006 termination date, in bilingual advertisements and in dozens

-4-

of cities and countries outside of Turkey, including New York City. Vakko has also used the Images for additional advertising campaigns, including Vakko's 2006 *Fall-Winter* season, and has digitally manipulated the Images to make Martinez appear more "Turkish."

14. Defendants' illegal usage continues. As recently as Saturday, April 28, 2007, Martinez was recognized by a newsagent in Manhattan from a Vakko advertisement on the back cover of a glossy English language only magazine still on the racks.

15. Except for the limited authorized usage permitted under the Contract, at no time did plaintiffs authorize any of the defendants by implied or express consent to use the Images or Martinez's image, anywhere in the world, in any public medium or format, including, but not limited to, print, advertising, billboards and/or promotion of defendants' products and services.

16. Facts indicate that defendant Turkish Airlines, who never even contracted for any rights, was complicit in Vakko's illicit exploitation, publishing the Images in its in-flight duty free catalogue, distributed to millions of passengers worldwide, for its own commercial ends.

17. As with most celebrities, Martinez vigorously protects, and carefully negotiates explicit contractual limits on, the use of his image.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of the Contract Against Defendants Vakko, Vakko Holding, Hakko and Starworks)

18. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

19. Between August 2006 and March 2007, and upon information and belief, continuing through the present, defendant Vakko, without the implied or express consent or authorization of plaintiffs, and in breach of the Contract, knowingly used, displayed, advertised, reproduced and published the Images in Turkish Airlines in-flight duty free magazine "S'HOP".

20. Upon information and belief, S'HOP is published by Turkish Airlines twice annually, in English and Turkish and is available to each passenger on flights to Turkish Airlines's 103 international destinations, including the United States and Europe. Upon information and belief, Turkish Airlines carried approximately 17.5 million passengers in 2006. S'HOP is also available online and is distributed by mail to purchasers worldwide.

21. Defendants Vakko, Vakko Holding, Hakko and Starworks knew at all times that they did not have plaintiffs' authority or consent to use the Images in Turkish Airlines's in-flight magazine.

22. Beginning *after* July 10, 2006, defendants Vakko, Vakko Holding and Hakko, without the implied or express consent or authorization of plaintiffs, and in breach of the Contract, knowingly used, displayed, advertised, reproduced and published the images of Martinez on billboards throughout Istanbul in connection with Vakko's *Fall-Winter* men's campaign.

23. Defendant Vakko knew at all times that it did not have plaintiffs' authority or consent to use Martinez's images for any purposes whatsoever after July 10, 2006, including, without limitation, on billboards in Istanbul.

24. Defendant Vakko, without the implied or express consent or authorization of plaintiffs, and in breach of the Contract, knowingly used, displayed, advertised, reproduced and published the Images and Martinez's full name, on the back cover of "34 Mag" a self-described international lifestyle magazine available only in English and sold in London, Paris, Milan, Istanbul, Rome, New York, Los Angeles, Amsterdam, Barcelona, Rio de Janeiro, Brussels, Berlin, Tokyo, Sydney, Dubai, Beirut, Lisbon, Athens, Tel Aviv, Moscow, Hong Kong, Toronto,

Cairo, Melbourne, Vienna, Sao Paolo, Helsinki, Casablanca, Bangkok, Zurich, Auckland, Taipei, Seoul and Cape Town.

25. Issues of 34 Mag with Martinez's image and full name are on newsstands at the present time, worldwide, including in New York State.

26. Defendants knew at all times that they did not have plaintiffs' authority or consent to use Martinez's images – or name – in English language magazines available outside of Turkey.

27. Vakko's digital manipulation of the Images to lend a more ethnic Turkish appearance to Martinez constitutes yet another breach of the Contract.

28. Vakko and Starworks were aware that the worldwide usage rights would have cost millions of dollars, if they would have been available at all.

29. As a result of the foregoing breach of the Contract, plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $5,000,000, and, as defendants have been unjustly enriched thereby, an amount equal to 100% of the profits earned by from sales of Vakko's products during the period of defendants' illegal worldwide use.

## AS AND FOR A SECOND CAUSE OF ACTION
### (New York State Civil Rights Law § 51 – defendants Vakko, Vakko Holding and Hakko)

30. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

31. The Images have been repeatedly utilized by defendants Vakko, Vakko Holding and Hakko for the purposes of promoting and advertising Vakko and its products and increasing Vakko's revenue from product sales.

32. Defendants Vakko and Hakko knowingly, recklessly, unlawfully and without plaintiffs' prior knowledge or consent, caused the Images to be printed, published and distributed

-7-

in New York State, in other states, and worldwide for trade and advertising purposes, through, inter alia, 34 Mag. S'HOP, and on the Internet at Vakko's and Turkish Airlines's web sites.

33. The only authorization granted by plaintiffs was for the limited use of the Images under the Contract. At no time did plaintiffs consent to the use of the Images, either orally or in writing, for any purpose other than as set forth in the Contract.

34. The use of Martinez's name and portrait was designed to drive sales of Vakko products and build worldwide brand awareness for Vakko by falsely linking Martinez's image and reputation to Vakko brands. This usage was intended to, and actually did, convey the impression that Martinez endorsed Vakko's products and the company.

35. Martinez's name, image and reputation are of great personal and pecuniary value to plaintiffs and Vakko was benefited and unjustifiably enriched by the use of the Images.

36. These acts by Vakko constitute a violation of New York State Civil Rights Law § 51.

37. By reason of the foregoing, plaintiffs have been damaged in an amount to be determined at trial, but in no event, less than $5,000,000 and an amount equal to 100% of the profits earned by Vakko from sales of its products during the period of defendants' illegal worldwide use. Plaintiffs are further entitled to exemplary damages in a sum of not less than $10,000,000 as defendants knowingly used Martinez's name, picture and portrait in violation of Civil Rights Law § 51.

### AS AND FOR A THIRD CAUSE OF ACTION
#### (New York State Civil Rights Law § 51 – defendant Turkish Airlines)

38. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

39. Upon information and belief, defendant Turkish Airlines is the publisher of S'HOP and derives substantial revenue through advertisement and product sales. S'HOP includes

products from Montblanc, Swarovski, Calvin Klein, Swatch, Adidas and Vakko. S'HOP also serves as a valuable brand asset of Turkish Airlines.

40. Products, including the Vakko men's ties photographed on Martinez, are available for purchase in-flight and over the Internet. Turkish Airlines's duty free web site further states: "We send our stores shopping catalogue to the addresses of our customers becoming members to our system." Upon information and belief, many of the customers reside outside of Turkey.

41. Through S'HOP, available to millions of Turkish Airlines passengers worldwide between August 2006 and March 2007, the Images have been repeatedly and continually utilized by Turkish Airlines for the purpose of generating sales and brand awareness.

42. Turkish Airlines knowingly, recklessly, unlawfully and without plaintiffs' prior knowledge or consent, caused the Images to be printed, published and distributed in New York State, in other states and worldwide for trade and advertising purposes, through, inter alia, through the worldwide physical distribution of S'HOP and by electronic distribution at Turkish Airlines's web sites.

43. At no time was there any authorization granted to Turkish Airlines by plaintiffs.

44. Martinez's name, image and reputation are of great value to plaintiffs and Turkish Airlines was benefited and unjustifiably enriched by the use of the Images in S'HOP.

45. The use of Martinez's name and portrait was exclusively for advertising and trade was designed to drive sales of duty free products and build worldwide brand awareness for Turkish Airlines by falsely linking Martinez's image and reputation to the airlines.

46. These acts by Turkish Airlines constitute a violation of New York State Civil Rights Law § 51.

47. By reason of the foregoing, plaintiffs have been damaged in an amount to be determined at trial, and an amount equal to 100% of the profits earned by Turkish Airlines from sales of its men's products during the period of defendants' illegal worldwide use. Plaintiffs are further entitled to exemplary damages as defendant knowingly used Martinez's name, picture and portrait in violation of Civil Rights Law § 51.

### AS AND FOR A FOURTH CAUSE OF ACTION
#### (Declaratory Relief)

48. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

49. The Contract requires Vakko to fully indemnify plaintiffs, including plaintiffs' attorneys' fees in connection with this action, for Vakko's breach of the Contract.

50. Plaintiffs should be awarded a declaration that they are entitled, pursuant to the Contract to full reimbursement for their legal fees and expenses incurred in connection with prosecuting this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### (Injunctive Relief)

51. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

52. Upon information and belief, defendants continue to, and intend to continue, the wrongful use of Martinez's name, portrait and likeness.

53. Plaintiffs respectfully request an order enjoining defendants, their agents, assigns, employees, independent contractors and/or other persons acting on their behalf, from distributing, using, displaying, exhibiting, assigning, reproducing, advertising or promoting advertising or causing to be published, exhibited, distributed, or sold any photographs, pictures,

facsimiles, portraits, photographic negatives, or other pictorial portrayal of Martinez herein without the written consent first obtained pursuant to Sections 50 and 51 of the Civil Rights Law

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request an order and judgment from the Court:

a.      On the First Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but in no event less than $5,000,000 and an amount equal to 100% of the profits earned by Vakko from sales of its men's products;

b.      On the Second Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but in no event, less than $5,000,000 and an amount equal to 100% of the profits earned by Vakko from sales of its men's products, together with an award of exemplary damages in an amount to be determined at trial, but in no event less than $10,000,000.00;

c.      On the Third Cause of Action, against awarding plaintiffs damages in an amount to be determined at trial and an amount equal to 100% of the profits earned by Vakko from sales of its men's products, together with an award of exemplary damages;

d.      On the Fourth Cause of Action, declaring that defendant Vakko fully indemnify plaintiffs for all costs and expenses, including plaintiffs' attorneys' fees in connection with prosecuting this action;

e.      On the Fifth Cause of Action, preliminarily and permanently enjoining defendants, their officers, partners, agents, and servants, and all others in privity with them, from using Martinez's photograph, image, name or likeness in any manner whatsoever;

f.      assessing appropriate punitive damages in an amount sufficient, but no less than $10,000,000, to punish defendants Vakko, Vakko Holding, Hakko and Turkish Airlines for their illegal conduct and to set an example to deter others from similar conduct;

g.      awarding plaintiffs pre- and post-judgment interest;

h.     awarding plaintiffs the costs and expenses of suit and its attorney's fees; and

i.     granting such other relief as may be just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury of their claims, as well as of all issues presented in this Complaint.

Dated:      New York, New York
            April 30, 2007

                        Respectfully submitted,


                        Seth Redniss (SR-7988)
                        REDNISS & ASSOCIATES, LLC
                        185 Franklin Street, 5th Floor
                        New York, NY 10013
                        212-334-9200

                        *Counsel for plaintiffs*